NEW AND USED LUMBER AND SUP-
PLY, INC., Intervenor, Appellant,

v.

Ben F. WHITEHILL, Intervenor,
Appellee.

No. 51454.

Court of Appeals of Oklahoma,
Division No. 2.

July 14, 1981.

Release for Publication by Order of Court
of Appeals Aug. 13, 1981.

H. J. Mesigh, Theimer, Mesigh & Page,
Oklahoma City, for appellant.

Karen Henson, Henson, Henson & Hen-
son, Shawnee, for appellee.

BRIGHTMIRE, Judge.

The ultimate question is whether, under
the unusual existing factual circumstances,
the trial court correctly concluded that an
unrecorded second mortgage lien possessed
priority over a subsequent perfected mate-
rialman's lien. We hold it did and affirm.

I

The orientational facts are that Parker
Square, Inc., whose stock was owned half
by C. Owen Parker and half by intervenor
Ben F. Whitehill, obtained a loan from
American National Bank & Trust Company
of Shawnee to remodel a Shawnee building
known as the Trico Bowl. American Na-
tional's note was secured by a first mort-
gage on the Trico property. Parker Square,
Inc., defaulted on the note, and American
National sued to foreclose its mortgage. It

obtained a judgment and the property was sold. The sale resulted in a $26,892.21 excess which was paid into court. It is this fund that is the subject of a dispute between two lien claimants who intervened in the lawsuit—Ben F. Whitehill and New and Used Lumber and Supply, Inc.

Whitehill, whose claim was for $30,000, was held by the trial judge to have a superior lien. New and Used appeals.

II

The more immediate operative facts giving rise to the controversy are largely undisputed. Whitehill signed an "Option to Purchase Agreement" on March 26, 1973, giving C.O. Parker a 90-day option to purchase the stock Whitehill owned in Parker Square, Inc., for the sum of $40,000. Among other things, C.O. Parker agreed that in the event American National Bank foreclosed on any Parker Square property prior to the option being exercised, "Whitehill shall be paid 'first money' after satisfaction of American National, until such payment equals the sum of one-half (½) the rentals now due Parker Square, Inc. by those businesses under control of C.O. Parker." The instrument then recites such sum amounts to $26,824.28. On July 1, 1973, Whitehill sold his stock in Parker Square, Inc., to the corporation for $40,000. C.O. Parker, as president of Parker Square, paid Whitehill $10,000 cash and executed a promissory note for the balance along with a second mortgage on the Trico property. The mortgage was never recorded. The note was never paid.

On July 6, 1973, C.O. Parker, who testified that he "was founder, director, and the president [of New and Used] up until July of 1973,"[1] on behalf of Parker Square, Inc., made a contract with New and Used to carry out a $122,113.13 remodeling job on Trico bowl.

On July 11, 1973, American National filed this action to foreclose its first mortgage and on October 23, 1973, it obtained a judgment. On February 1, 1974, Whitehill filed a petition to intervene in this suit and asked the court to declare his unrecorded second mortgage to be a superior lien on the foreclosed property entitling him to any excess funds realized from the sale of the Trico property. On March 19, 1974, the sheriff sold Trico Bowl, which sale resulted in an impounded excess fund of $26,892.21.

New and Used perfected a materialman's lien on all the Parker Square property on June 24, 1974, to secure an indebtedness of $110,113.13 for work done on Trico Bowl during the preceding 12 months. On November 23, 1976, New and Used was granted leave to intervene in this action and it asked the court to declare its lien superior to that of Whitehill and to give it the impounded money. The court declined to do so and entered judgment for Whitehill, precipitating this appeal by New and Used.

III

New and Used's first assignment of error is that before whitehill's mortgage could become a valid security it had to be recorded as a mortgage. For this legal conclusion it relies on the provisions of 46 O.S.1971 §§ 1–10.

The argument is difficult to follow. The statutes to which New and Used refer speak to situations where deeds and other conveyances of real estate appear on their faces to be indefeasible grants but which in fact are intended to be defeasible or as securities for repayment of money. But none of these statutes purports to declare void an unrecorded mortgage or deed intended as a mortgage. They simply say that recording of a deed intended as a mortgage unaccompanied by a written explanation of its true character shall impart no constructive notice to anyone.[2]

1. Apparently, C.O. Parker transferred 90 percent of the outstanding New and Used stock to his daughter sometime in July, 1973, and thereafter considered himself "ex officio" president until January, 1974.

2. 46 O.S. 1971 § 8 reads:

"Grant intended as mortgage recorded as mortgage.—Every grant of real property, or of any estate therein, which appears by any

And so the argument of New and Used falters for at least two significant reasons. The first we have already mentioned—the statutes do not invalidate unrecorded mortgages. The second one is that the instrument held by Whitehill states on its face in large black print that it is a "Second Mortgage of Real Estate." And about midway down the page it recites that: "This conveyance is intended as a mortgage to secure the payment of one promissory note of even date herewith: Made to Ben F. Whitehill or order payable at Tulsa, Oklahoma with 6½ per cent interest per annum from date . . . ."

Hence, we hold the first contention is without merit.

## IV

New and Used's second proposition—that its demurrer to Whitehill's evidence should have been sustained—is based on the argument made in connection with its first assignment and it, therefore, must suffer the same fate.

## V

The last proposition of New and Used, as the first, is not easy to understand. It reads this way:

"That error of law occurred at the trial and excepted to by the appellant relative to the trial court not finding that the appellant had sustained its burden of proof by establishing priority of its judgment lien by having perfected said mechanic's or materialmen's lien as provided by law, in furnishing materials and labor as contracted."

New and Used directs our attention to 42 O.S. 1971 § 141 as amended, which specifies that laborers and materialmen shall have a lien on land they work on at the request of the owner which lien shall be preferred to all other subsequent encumbrances and, when perfected as called for in the act, shall be constructive notice of the lien to all later purchasers and encumbrancers after the date the first labor is performed or material furnished.

The argument apparently is: that the owner of Trico Bowl, Parker Square, Inc., signed a written contract July 6, 1973, calling for New and Used to refurbish Trico Bowl; that New and Used began work on the building that same month and was "forced to leave the project in March, 1974," as a result of this foreclosure action by American National Bank; and that New and Used filed its lien claim on June 24, 1974. This evidence, continues New and Used, coupled with its proof of the unpaid bill for the labor and materials it furnished, entitled it to priority over Whitehill's mortgage.

The issue, however, is not whether New and Used perfected a lien—which we think it did. Rather the issue is whether its lien, though subsequent to Whitehill's mortgage, is nevertheless superior to it for some legal reason. New and Used does not address this matter save, perhaps, tangentially in its first proposition.

■ Of course, about the only thing it could have argued in this regard, had it chosen to do so, is that it had no notice of the mortgage, constructive or otherwise, when it commenced work on the Trico Bowl. Undoubtedly New and Used's failure to meet the notice problem head-on was because of certain fundamental chinks in its offensive armor.

C.O. Parker, who gave Whitehill the second mortgage on the Parker Square property, was, at the time he did so, the

other writing, to be intended as a mortgage within the meaning of this chapter, must be recorded as a mortgage; and if such grant and other writing explanatory of its true character are not recorded together at the same time and place, the grantee can derive no benefit from such record."

46 O.S. 1971 § 10 reads:
"Separate instrument recorded.—Every instrument explanatory of any deed or other writing purporting to be a conveyance but intended to be defeasible or as security for the payment of money, shall be deemed a part thereof, and must be filed and recorded therewith; and unless such instruments are so filed and recorded together, they and each of them shall have no other effect than an unrecorded mortgage, and the recording of the principal instrument shall secure no rights to the holder thereof."

founder, director, managing officer and majority (95 percent) stockholder of New and Used. The trial court likely peeked behind the corporate veil and concluded, correctly we think, that New and Used had actual notice of Whitehill's second mortgage both at the time it was given and at the time New and Used contracted with another C.O. Parker owned concern—Parker Square, Inc.—to refurbish Trico Bowl. The court also could have found that by the time New and Used commenced work on Trico Bowl, Whitehill had intervened in this lawsuit seeking to foreclose his second mortgage, thus imparting lis pendens notice to New and Used.

It seems to us that to rule other than the way the trial judge did under the circumstances of this case, would, in effect, permit C.O. Parker to gain an unfair advantage over Whitehill by allowing Parker to hide behind the veil of one of his corporate structures. We hold the trial judge reached a fair and just result. His judgment is affirmed.

BACON, P. J., and BOYDSTON, J., concur.